**WO**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B Street Grill and Bar LLC, et al., | No. CV-20-01326-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Cincinnati Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant Cincinnati Insurance Company's ("Cincinnati") Motion to Dismiss. (Doc. 19.) Plaintiffs, B Street Grill and Bar, LLC, Union Grill and Tap, LLC, and 212 Grill & Bar, LLC, responded, (Doc. 27), and Cincinnati replied. (Doc. 29.) The Court is in receipt of Defendant's Notice of Errata to its Motion to Dismiss providing a bates labeled version of Exhibit A to the Motion. (Doc. 21.) The Court is also in receipt of the parties' many notices of supplemental authority (Docs. 33, 34, 35, 36, 38, 39, & 40.) Plaintiffs requested oral argument, but the Court elects to rule without it, finding that it is unnecessary. *See* LRCiv. 7.2(f). The Court has considered the pleadings and issues the following Order.

## I.   BACKGROUND

Plaintiffs filed suit against Cincinnati for a declaratory judgment and breach of contract relating to Cincinnati's denial of coverage for Plaintiffs' business losses and extra expenses stemming from the COVID-19 pandemic and the resulting government orders. (Doc. 1-3.) Plaintiffs contend the insurance contract they purchased from Cincinnati ("the

1    policy") covers loss of income and extra expenditures stemming from the State of

2    Arizona's mandate that restaurants suspend in-person dining services due to the COVID-

3    19 pandemic. Plaintiffs attached a copy of the Cincinnati policy at issue to their Complaint

4    (Doc. 1-3, Ex. A)[1] and have alleged the following:

5          Cincinnati issued the policy to Plaintiffs for the period of October 25, 2017 to

6    October 25, 2020. (*Id.* ¶ 15.) Plaintiffs are the "Named Insured[s]" on the policy. (*Id.* ¶ 18.)

7    Cincinnati agreed to indemnify Plaintiffs' at three business properties where they have

8    restaurants located in Mesa and Gilbert, Arizona. (*Id.* ¶ 19.) Plaintiffs have paid all

9    premiums to maintain coverage. (*Id.* ¶ 20.)

10         Plaintiffs allege that, due to the COVID-19 pandemic, their three restaurant

11   locations have "suffered direct accidental physical loss or accidental physical damage to

12   property." (*Id.* ¶ 42.) On March 19, 2020, while the policy was in effect, Governor Ducey

13   issued Executive Order 2020-09[2], which provided that all restaurant facilities in Arizona

14   were required to "close access to on-site dining until further notice." (*Id.* ¶¶ 45-46.)

15   Plaintiffs allege the Executive Order mandated that businesses, including Plaintiffs,

16   "follow social distancing and suspend regular operations." (*Id.* ¶ 48.) Plaintiffs further

17   allege that in response to the Executive Order, Plaintiffs and the public were prohibited

18   "from fully accessing and utilizing the Insured Properties, as well as those premises

19   surrounding the Insured Properties." (*Id.* ¶ 49.) However, the Executive Order allowed

20   restaurants to continue serving through pick up, delivery, and drive-thru operations. (*Id.* ¶

21   48.)

22         Moreover, the Complaint states, "the CDC stated that [COVID-19] remains viable

23   for hours to days on surfaces. Moreover, infectious particles are invisible to the naked eye,

24   and every surface touched by a person infected by [COVID-19] may be presumed

25

26   [1] Although the policy was not attached to the Complaint contained on the docket because
27   the Court obtained the Complaint through a notice of Removal, Cincinnati has attached a
     copy of the policy at issue to their Motion to Dismiss. (Doc. 19-1, Ex. A.)
28   [2] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of
     Executive Order 2020-09, https://azgovernor.gov/sites/default/files/eo_2020-09_3.pdf.

1  contaminated, even if that person is asymptomatic." (*Id.* ¶ 51.) During "this time",

2  Plaintiffs' allege that their Director of Food and Beverage tested positive for COVID-19.

3  (*Id.* ¶ 53.) During the time he tested positive, he maintained "an active daily physical

4  presence at all three restaurant locations." (*Id.* ¶ 52.) Additionally, one of Plaintiffs' owners

5  tested positive for COVID-19 after that owner had maintained an active weekly presence

6  at all three restaurant locations. (*Id.* ¶ 53.) In light of the CDC statements and their own

7  illnesses, Plaintiffs' allege the presence of the virus "on or near the Insured Properties has

8  rendered those locations unusable and non-functioning for their intended purposes as

9  insured under the Policy." (*Id.* ¶ 54.) Further, the pandemic, virus, and government

10 restrictions have "physically impacted public and private property, severely limited the

11 functionality and habitability of the Plaintiffs' premises." (*Id.* ¶ 55.) As a result, the

12 Complaint alleges Plaintiffs have suffered and continue to suffer "direct accidental physical

13 loss or accidental physical damage to their premises," including substantial loss of revenue.

14 (*Id.* ¶¶ 56-57.)  Plaintiffs have been forced to furlough or lay off employees due to this

15 damage. (*Id.* ¶¶ 57.)

16    Plaintiffs allege that they specifically purchased the coverage at issue with the

17 understanding that the policy would cover business losses in the event of a shutdown from

18 a virus pandemic. (*Id.* ¶ 39.) Plaintiffs provided notice of their losses to Cincinnati. (*Id.* ¶

19 60.) By letter dated May 1, 2020, Cincinnati disclaimed any obligation to indemnify

20 Plaintiffs on the grounds that there was "no direct physical loss to property, as required by

21 the Policy." (*Id.* ¶ 61.)

22    The policy at issue is an all-risk policy providing coverage for "direct 'loss' to

23 Covered Property at the 'premises' caused by or resulting from any Covered Cause of

24 Loss." (*Id.* ¶ 21, Ex. A at 36.) The policy includes several different coverage parts,

25 including a "Building and Person Property Coverage Form that provides coverage

26 extensions for Business Income, Extra Expense, Civil Authority, and Extended Business

27 Income." (*Id.* ¶ 22.) The policy also includes a separate "Business Income (And Extra

28 Expense) Coverage form" which provides Business Income, Extra Expense, Civil

Authority, Extended Business Income, and Ingress and Egress coverage. (*Id.* ¶ 23.) In the "Business Income (And Extra Expense) Coverage section, the policy states:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations.

(*Id.* ¶ 26, Ex. A at 103.) Similarly, the "Building and Person Property Coverage Form" states:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".

(*Id.* ¶ 28, Ex. A at 51.) The policy defines the term "loss" to mean "accidental or physical loss or accidental physical damage." (*Id.* ¶ 30.) The policy defines suspension to mean: "a. The slowdown or cessation of your business activities; and b. That a part or all of the 'premises' is rendered untenantable." (*Id.* ¶ 33.) In the "Business Income (And Extra Expense) Coverage form", the policy promised to provide Extra Expense coverage for necessary expenses Plaintiffs sustained "during the 'period of restoration' that [Plaintiffs] would not have sustained if there had been no direct 'loss' to property caused by or resulting from a Covered Cause of Loss." (*Id.* ¶ 36.) The policy does not contain an exclusion for loss caused by a virus. (*Id.* ¶ 38.)

Plaintiffs advance two claims. In Count I, Plaintiffs seek a Declaratory Judgment pursuant to A.R.S. §§ 12-1831 *et seq.* seeking a judgment from the Court finding that Cincinnati is obligated to pay the full amount of Plaintiffs' losses. (*Id.* ¶¶ 63-72.) Plaintiffs also bring a claim for breach of contract alleging that Cincinnati's failure to cover its claims under the policy constitutes a material breach of the policy. (*Id.* ¶ 77.)

Plaintiffs filed their Complaint in Maricopa County Superior Court on June 5, 2020. (Doc. 1 at 1.) On July 6, 2020, Cincinnati filed a notice of removal removing the case to this Court. Cincinnati filed their Motion to Dismiss on July 24, 2020, to which a response

1 and reply followed.

2 **II.   LEGAL STANDARD**

3      To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet

4 the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the

5 claim showing that the pleader is entitled to relief," so that the defendant has "fair notice

6 of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*,

7 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Dismissal

8 under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence

9 of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police*

10 *Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a cognizable legal

11 theory will survive a motion to dismiss if it contains sufficient factual matter, which, if

12 accepted as true, states a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*,

13 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

14      In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are

15 taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v.*

16 *Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  However, legal conclusions couched as

17 factual allegations are not given a presumption of truthfulness, and "conclusory allegations

18 of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto*

19 *v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  A court ordinarily may not consider evidence

20 outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss.  *See United States v.*

21 *Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider materials—

22 documents attached to the complaint, documents incorporated by reference in the

23 complaint, or matters of judicial notice—without converting the motion to dismiss into a

24 motion for summary judgment."  *Id.* at 908.

25 **III.   NOTICES OF SUPPLEMENTAL AUTHORITY**

26      The purpose of a Notice of Supplemental Authority is to inform the Court of a newly

27 decided case that is relevant to the dispute before it, not a venue for submission of

28 additional argument or factual evidence.  *See Nichols v. Harris*, 17 F.Supp.3d 989, 996 n.

1    3 (C.D. Cal. 2014) ("Filing a notice of supplemental authority to inform the Court of a new

2    judicial opinion is appropriate, but it is an improper occasion to argue outside the

3    pleadings."); *see also Hagens Berman Sobol Shapiro LLP v. Rubinstein*, 2009 WL

4    3459741, at *1 (W.D. Wash. Oct. 22, 2009) (notice of supplemental authority improper

5    "because it contained argument regarding the case" submitted for the court's review).

6          Here, both parties have used notices of supplemental authority improperly by using

7    them as an opportunity to further their arguments. Therefore, the Court will strike

8    documents 40, 39, 38, 36, and 34. However, the Court will consider cases cited by the

9    parties in such notices.

10   **IV.    DISCUSSION**

11          **A. The Policy's Requirements**

12          Central to the policy is that the loss must be tied to "accidental physical loss or

13   accidental physical damage" to the properties. The parties disagree about what that means

14   but agree that Arizona law applies to the insurance policy at issue. Under Arizona law, the

15   interpretation of an insurance contract is generally a question of law for the court. *Lennar*

16   *Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 244 (App. 2011). Insurance contract

17   provisions are construed according to their plain and ordinary meaning. *Keggi v.*

18   *Northbrook Prop. Ins. Co.*, 199 Ariz. 43, 46 (App. 2000) (citing *Sparks v. Republic Nat.*

19   *Life Ins. Co.*, 132 Ariz. 529, 534 (1982)). Ambiguities in insurance contracts are construed

20   against the insurer; however, this rule only applied to provisions that are "'actually

21   ambiguous.'" *Id.* (quoting *Thomas v. Liberty Mut. Ins. Co.*, 173 Ariz. 322, 325 (App.

22   1992)). Courts are not to invent ambiguity, where none exists, to get a good result. *Sec.*

23   *Ins. Co. of Hartford v. Andersen*, 158 Ariz. 426, 428 (1988).

24          Cincinnati argues that the policy does not cover any of Plaintiffs' losses because the

25   "Complaint does not allege facts showing any direct physical loss to any property." (Doc.

26   19 at 7.) The policy requires "direct 'loss' to property" for coverage to apply. (Doc. 19-1,

27   Ex. A at 103.) The policy defines the term "loss" to mean "accidental physical loss or

28   accidental physical damage." (Doc. 19-1, Ex. A at 71, 111.) Cincinnati argues that direct

1   physical loss requires "actual, tangible, permanent, physical alteration to property." (Doc.

2   19 at 8.) Cincinnati cites a number of cases in support of this proposition.  Cincinnati points

3   to *White Mountain Communities Hosp. Inc. v. Hartford Cas. Ins. Co.*, No. 3:13-CV-8194

4   JWS, 2015 WL 1755372 (D. Ariz. Apr. 17, 2015) as an example of how Arizona law

5   requires actual physical loss under the policy. In *White Mountain*, a hospital purchased an

6   insurance policy that provided insurance coverage against "business income losses as well

7   as property losses." *Id.* at *1. The hospital brought a claim for breach of contract against

8   the insurance company when the insurance company refused to cover the hospital's lost

9   revenue which was caused by a nearby fire. *Id.* at *2. The insurance policy at issue required

10  "direct physical loss" or "*direct physical damage caused by or resulting from a Covered*

11  *Cause of Loss to property…*" *Id.* (emphasis original). The court noted that "only income

12  lost because of business interruption caused by physical damage to property is covered."

13  *Id.* The Court ultimately found that "there [was] no evidence in the record to show that the

14  income loss was due to physical property damage itself, as opposed to the unfavorable

15  business conditions in the area as a result of the fire." *Id.* at *4. Since the hospital did not

16  show that their reduction in business was due to smoke damage to their property, the court

17  entered summary judgment in favor of the insurance company on the breach of contract

18  claim. *Id.* at *3-*4.

19          Plaintiffs argue that *White Mountain* actually undermines Cincinnati's position

20  because the policy language at issue was more restrictive than in this case. The policy

21  language at issue here requires "accidental physical loss or accidental damage" while the

22  language in White Mountain required "direct physical loss of or direct physical damage."

23  (Doc. 27 at 10.) Further, Plaintiffs argue the hospital was allowed to continue operating

24  while here, "Plaintiffs were unable to utilize their premises as restaurants." (*Id.*) Lastly,

25  Plaintiffs argue that while the hospital failed to show evidence that it lost business income

26  due to the smoke contamination, Plaintiffs "have plainly asserted that their lost business

27  income resulted directly from property loss caused by the virus. (*Id.*)

28          Plaintiffs urge the Court to instead look to *American Guarantee & Liab. Ins. Co. v.*

1  *Ingram Micro, Inc.* for guidance. No. CIV. 99-185 TUC ACM, 2000 WL 726789 (D. Ariz.
2  Apr. 18, 2000). In that case, the court had to determine whether an insurance policy covered
3  computers which lost some functionality after a power outage. *Id.* at *2. The court found
4  that the definition of "physical damage" in the insurance policy was "not restricted to the
5  physical destruction or harm of computer circuitry but include[d] loss of access, loss of
6  use, and loss of functionality." *Id.* After examining statutes from Connecticut, Minnesota,
7  Missouri, and New York as well as a federal statute, the court concluded that "[l]awmakers
8  around the country have determined that when a computer's data is unavailable, there is
9  damage; when a computer's services are interrupted, there is damage; and when a
10  computer's software or network is altered, there is damage." *Id.* at *3.

11      Examining both cases, the Court is more persuaded by the *White Mountain* decision
12  and finds that the policy in question requires actual physical damage to Plaintiffs' property.
13  Despite Plaintiffs contention, the policy language in *White Mountain* was virtually the same
14  as the policy language at issue here. The only difference is the addition of the word
15  "accidental" in the place of "direct" modifying "physical damage." However, both policies
16  nonetheless require physical damage. Further, the *White Mountain* case interpreted the
17  policy in accordance with Arizona law, while the court in *Ingram* was persuaded by the
18  definition of damage to computers from other jurisdictions. Moreover, the facts of *White
19  Mountain* are more analogous to this case. As Cincinnati points out, the application of
20  *Ingram* here is limited because that case was "limited to the highly technical field of
21  information technology." (Doc. 29 at 6.) And the damage to the computers had to be
22  repaired. There is nothing to be repaired here.

23      The Court is persuaded by the guidance found in the *White Mountain* decision and
24  finds, like the policy in *White Mountain*, this policy requires actual physical damage to the
25  covered premises as a prerequisite of coverage. The Business Expense (And Extra
26  Expense) coverage form requires (1) "direct 'loss' to property at 'premises'"; and (2) "[t]he
27  'loss' is caused by or results from a 'Covered Cause of Loss.'" (Doc. 1-3 ¶ 27; Doc. 19-1,
28  Ex A at 103.) The policy defines the term "loss" as "accidental physical loss or accidental

physical damage." (Doc. 1-3 ¶ 30; Doc. 19-1, Ex. A at 71, 111.) "Covered Cause of Loss" is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Doc. 19, Ex. A at 38.) These definitions applied to both the Building and Personal Property coverage form as well as the Business Income (and Extra Expense) coverage form. (Doc. 1-3.) The policy language is unambiguous. The policy clearly requires direct accidental physical loss or accidental physical damage to property. As in *White Mountain*, the Court finds that the policy requires actual physical damage to Plaintiffs' property for coverage to apply. This decision comports with decisions from other circuits examining the definition of "physical loss" in the insurance context. *See Mama Jo's Inc. v. Sparta Ins. Co.*, 823 Fed.Appx. 868, 879 (11th Cir. 2020) (finding that an item or structure that merely needed to be cleaned has not suffered a "direct physical loss"); *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (affirming the district court's ruling that a supplier's inability to function after the loss of power did not constitute direct physical loss or damage under an insurance contract); *Source Food Tech, Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006) (finding that a company's inability to transport its beef products from Canada into the United States due to a U.S. beef embargo did not constitute "direct physical loss to property").

Plaintiffs have failed to allege actual physical damage to their restaurants in their Complaint. Plaintiffs allege no facts showing their premises were physically damaged in any way. Plaintiffs argue that, "The presence of, and potential further risk of exposure to, the virus on or near the Insured Properties rendered those locations unusable and non-functioning for their intended purposes as insured under the Policy." (Doc. 27 at 3 (citing Doc. 1-3 ¶ 5).)[3] Plaintiffs attempt to demonstrate physical damage in the Complaint by alleging that two people who regularly worked in their restaurants contracted COVID-19. (Doc. 1-3 ¶¶ 52-53.) Plaintiffs also contend that their lost income due to COVID-19 and

---

[3] In making this argument, Plaintiffs point to *Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127-SRB at 10 (W.D. Mo. 2020) ("Plaintiffs here have plausibly alleged that COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable.").

1   the government restrictions constituted actual physical damage. (Doc. 27 at 14.) Cincinnati
2   counters by arguing that there is no direct physical loss in situations where a contaminant
3   or substance can be removed by simply cleaning. *See, e.g., Mama Jo's Inc.*, 823 Fed.Appx.
4   at 879 ("under Florida law, an item or structure that merely needs to be cleaned has not
5   suffered a 'loss' which is both 'direct' and 'physical.'"). The Court agrees with Cincinnati.
6   The mere fact that Plaintiffs needed to clean surfaces that could host the virus does not
7   constitute actual physical damage entitling them to coverage under the policy. Plaintiffs
8   could easily remedy the problem by diligently cleaning, and clearly no repairs were
9   necessary. As stated in a similar case, "Because routine cleaning, perhaps performed with
10  greater frequency and care, eliminates the virus on surfaces, there would be nothing for an
11  insurer to cover…" *Uncork and Create LLC v. Cincinnati Ins. Co.*, No. 2:20-CV-00401,
12  2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020). Accordingly, the Court finds
13  Plaintiffs failed to allege actual physical damage covered by the policy at issue.

14      Although Plaintiff argues the policy does not contain an exclusion for viruses or
15  communicable diseases, the Court is not persuaded that Plaintiffs allegations could trigger
16  coverage. Plaintiffs have not shown that their injury should be covered by the policy in the
17  first instance. *See Keggi*, 199 Ariz. at 46 (holding that the insured bears the burden to
18  establish coverage under an insuring clause). Therefore, the Court cannot conclude that the
19  policy should be construed against Cincinnati due to its failure to exclude viruses or
20  diseases under the policy.

21      The Court's decision in this case comports with a recently decided case from
22  Maricopa County Superior Court interpreting identical insurance provisions in a Cincinnati
23  policy. *See Klos Enterprises, LLC v. Cincinnati Ins. Co., et al.,* Superior Court, Maricopa
24  County, No. CV 2020-010496 (Feb. 10, 2021). As in this case, in *Klos*, the plaintiff had
25  purchased an "all risk" insurance policy from Cincinnati and was seeking economic
26  damages from under the insurance policy due to the COVID-19 pandemic. *Id.* The court
27  concluded that "in order for there to be coverage, there must be direct physical loss or
28  damage to the property." *Id.* at 3. The court was not persuaded by the argument that the

virus caused property damage by contaminating the property. *Id.* Thus, the Court's order comports with that of Arizona courts interpreting Arizona insurance law and identical policy language.

### B. Civil Authority Coverage

Plaintiffs also fail to state a claim under the Civil Authority provision of the policy. Under the policy, the Civil Authority provision applies when a "Covered Cause of Loss" causes damage to property other than the insured's premises and prohibits access to the insured's premises. (Doc. 19-1, Ex. A at 52, 104.) The Civil Authority provision contains two additional requirements: (1) access to the area immediately surrounding the property is prohibited by civil authority as a result of the damage, and (2) the civil authority is taken in response to the dangerous physical conditions resulting from the damage or "Covered Cause of Loss". (*Id.*) As explained above, a "Covered Cause of Loss" under the policy requires some sort of actual physical damage. Plaintiffs have failed to allege any actual damage. Additionally, Plaintiffs have failed to allege any damage to property that is not the insured premises. Even if they had, Executive Order 2020-09 did not prohibit access to the insured premises, but merely stated that on-site dining was prohibited. (Doc. 19-1, Ex. A ¶ 2 ("Restaurants may continue serving the public through pick up, delivery, and drive-thru operations.").) Accordingly, Plaintiffs claims for Civil Authority coverage under the policy must be dismissed.

### C. Ingress/Egress Coverage

Plaintiffs likewise fail to state a claim under the Ingress/Egress provision of the policy. Coverage under the Ingress/Egress provision requires that the prevention of existing ingress and egress at the premises be due to direct "loss" by a Covered Cause of Loss "at a location contiguous to such 'premises.'" (Doc. 19-1, Ex. A at 106.) Thus, coverage under this provision requires actual physical damage just like other provisions of the policy. The main difference with ingress and egress coverage is that the damage must be done to a contiguous property. Plaintiffs do not allege any such facts in the Complaint. Even if they had, the coverage provision also requires the damage to prevent existing ingress and egress

1  at the covered premises. Executive Order 2020-09 did not prevent employees or customers

2  from entering the premises. Instead, the Governor's order continued to allow carryout and

3  delivery. Thus, Plaintiffs' have failed to allege that ingress and egress to their restaurants

4  were prevented. Clearly the building was still accessible despite the presence of the virus.

5  Thus, Plaintiffs' claims for Ingress/Egress coverage must be dismissed.

6  **V.    CONCLUSION**

7      For the reasons discussed above, the Court grants Cincinnati's Motion to Dismiss

8  and dismisses Plaintiffs' claims. It does not appear that Plaintiffs could cure the Complaint

9  through the allegation of additional facts. Therefore, the Court will dismiss Plaintiffs'

10  claims with prejudice. Accordingly,

11      **IT IS ORDERED** granting Defendant's Motion to Dismiss (Doc. 19) and

12  dismissing Plaintiffs' claims with prejudice.

13      **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and

14  terminate this case.

15      Dated this 5th day of March, 2021.

16

17

18

19                  Honorable Susan M. Brnovich
                    United States District Judge

20

21

22

23

24

25

26

27

28